UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

```
                                                                    F I L E D
                                                                    June 29, 2017
                                                                    BANKRUPTCY COURT
                                                                    ROCHESTER, NY
```

In re

    Canandaigua Land Development, LLC,    Bankruptcy Case No. 11-20888-PRW
                                                                                                    Chapter 7

                                    Debtor.

**DECISION AND ORDER
DISMISSING CHAPTER 7 CASE FOR CAUSE,
UNDER 11 U.S.C. § 707(a)(1),
REINSTATING AVOIDED TRANSFER,
UNDER 11 U.S.C. § 349(b)(1)(B),
VACATING ORDER AND JUDGMENT PREVIOUSLY GRANTED UNDER
11 U.S.C. § 550, AS PERMITTED BY 11 U.S.C. § 349(b)(2), AND
REVESTING TITLE TO PROPERTY OF THE ESTATE
IN THE COUNTY OF ONTARIO,
UNDER 11 U.S.C. § 349(b)(3)**

PAUL R. WARREN, United States Bankruptcy Judge

      The Court issued an Order for the Chapter 7 trustee—and any party in interest—to show cause why this long-in-the-tooth case should not be dismissed for cause under 11 U.S.C. § 707(a)(1). (ECF BK No. 140). In response, the trustee requests more time to try to sell the debtor's sole asset, that being 50 acres of undeveloped land near Canandaigua. (ECF BK Nos. 142; 34, Sch. B). The trustee requests more time, despite having had nearly 3 years to sell the property, "to obtain funds to pay creditors." (ECF BK No. 142 ¶ 4). The trustee acknowledges that sale of the real estate is not possible because of the inability to access public sewers. (*Id.* ¶ 2 & Ex. A). The County of Ontario—the largest creditor when the case started in 2011 and now

the largest creditor (many times over) because of the continued accumulation of unpaid taxes, penalties, and interest—asks the Court to stop the bleeding and dismiss the case. (ECF BK No. 143). The County also requests that title to the real estate be revested in Ontario County, under 11 U.S.C. § 349(b)(3), and not deemed abandoned to the Debtor under 11 U.S.C. § 554(c). A hearing was held on June 29, 2017, at which Ontario County pressed for dismissal—arguing that it "has been victimized by the delays encountered in these proceedings." (*Id.* ¶ 17).

Cause to dismiss a chapter 7 case exists, under 11 U.S.C. § 707(a)(1), where there has been an unreasonable delay that is prejudicial to creditors. Because nearly 3 years have elapsed since the trustee was appointed to liquidate the property—and a total of over 6 years has passed since this case was filed—coupled (critically) with the lack of public sewer access (making any potential for sale a mere pipe dream), there has been "unreasonable delay" in the liquidation of the Estate's only asset. And because the past due real estate taxes, with statutory penalties, interest, and costs, have skyrocketed from $16,500—when the case started—to over $156,000 now, little effort is required to find that Ontario County has been "prejudiced" by that delay. The time to fish is over. It is time to cut bait.

The Court finds ample cause to dismiss this case under 11 U.S.C. § 707(a)(1). Having conducted a hearing after notice to all parties, and having found cause exists to warrant dismissal, the Court orders that this case be **DISMISSED** under 11 U.S.C. § 707(a)(1). The transfer avoided by this Court under 11 U.S.C. § 548 is **REINSTATED**, as permitted by 11 U.S.C. § 349(b)(1)(B). The Order and Judgment granted under 11 U.S.C. § 550 is **VACATED**, as provided under 11 U.S.C. § 349(b)(2). The Court further orders that title to the property is **REVESTED** in Ontario County, the entity in which title was vested immediately before the commencement of this case, under 11 U.S.C. § 349(b)(3).

2

# I.

## JURISDICTION

The Court has jurisdiction under 28 U.S.C. §§ 157(a), 157(b)(1), and 1334(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O). This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Rule 7052 FRBP.

# II.

## ISSUE

The question is whether this case should be dismissed for cause, when no sale of the Estate's only asset has been brought about after several years of marketing, because of the lack of access to public sewers, and where the largest creditor—a county taxing authority—has been prejudiced because the delay in liquidation has resulted in a 10-fold increase in the amount of past-due real estate taxes owed with respect to the Estate's real property asset. The answer is yes, of course.

# III.

## DISCUSSION

Canandaigua Land Development, LLC ("CLD" or "Debtor") filed a chapter 11 petition on May 4, 2011, for the sole purpose of stopping an auction sale of its only asset, 50 acres of unimproved real estate in Canandaigua, New York. (ECF BK No. 1). Months earlier, the County of Ontario ("County") had commenced a tax foreclosure under Article 11 of the New York Real Property Tax Law to collect $16,595 in delinquent real estate taxes. The redemption date under New York law came and went, without CLD paying the past due taxes. As a

3

consequence, a judgment in favor of the County–awarding the County with title to the real estate—was granted by the state court in February 2011.

Shortly after filing its chapter 11 petition, CLD started an adversary proceeding seeking to set aside the *in rem* tax foreclosure as a constructively fraudulent conveyance under 11 U.S.C. § 548. (ECF AP (Case No. 2-11-02037-PRW) No. 1). The case was eventually converted to a chapter 7 liquidation, and the chapter 7 trustee ("Trustee") became the plaintiff in the adversary proceeding. (ECF BK No. 59). The County and CLD brought competing motions for summary judgment, after extensive related motion practice. (ECF AP Nos. 55, 64). This Court granted summary judgment in favor of CLD and set aside the *in rem* tax foreclosure under 11 U.S.C. § 548. (ECF AP No. 140). The Court directed that the real estate be conveyed to the Trustee, "for orderly liquidation for the benefit of the Bankruptcy Estate." (*Id.*); *see also* 11 U.S.C. § 704(a)(1) and 11 U.S.C. § 550(a).[1] That took place on November 5, 2014.

The County appealed the Court's decision. But, before the appeal could be heard by the District Court, the Trustee and County entered into a stipulated Order dismissing the appeal and affording the Trustee with 6 months to sell the real estate. That agreement was reached in August 2015. The Trustee immediately sought, and this Court approved, the appointment of a

---

[1] The Court issued a lengthy decision on the competing summary judgment motions. *See Canandaigua Land Dev., LLC v. County of Ontario*, 521 B.R. 457 (Bankr. W.D.N.Y. 2014) (Warren, J.). The Court has been invited by debtors in subsequent cases to extend *Canandaigua* beyond the unique facts in that case. The Court has repeatedly declined that invitation and has narrowly applied *Canandaigua*—despite the admittedly broad brush language used in Part (VI)(B)(2) of that decision. The Court continues to mull over whether it properly applied all of the factors identified by the Supreme Court in *BFP v. Resolution Trust Corp.*, 511 U.S. 531 (1994). Because the underpinnings of *Canandaigua* need not be revisited in order to decide the issue under 11 U.S.C. § 707(a)(1), the Court will continue pondering the workings of *BFP* until confronted with an actual case and controversy.

real estate broker to list the property. (ECF BK Nos. 107, 113). On December 21, 2015, the Trustee filed a motion seeking approval of the sale of the real estate, under a contingent sales contract and for a price of $425,000, to close within 45 days. (ECF BK Nos. 133, 136). An Order was entered on January 21, 2016, granting that sale motion. (ECF BK No. 138). So far, so good. And then . . . "*nothing happened*!"[2]

The Court has monitored the case docket during the 18 months since it approved a sale of the real estate. The absence of any docket activity in the case following entry of the Order approving a sale "within 45 days" hinted at the likelihood of a problem. Aware of its prior decision in this case, conveying the real estate to the Trustee for liquidation, and keenly aware that no real estate taxes had been paid for the property since 2009, the Court issued an Order to the Trustee (and all parties in interest), to show cause why this case should not be dismissed under 11 U.S.C. § 707(a)(1) and § 105(a). (ECF BK No. 140). In response, the Trustee made the Court aware–for the first time—that the approved sale contract had failed to close because the property has no access to public sewers. (ECF BK No. 142 ¶ 2). And, according to the Trustee, "[t]he only recourse is to obtain ownership of an adjacent parcel or an easement [from a neighboring land owner]." (*Id.* ¶ 2 & Ex.). How that might be accomplished is left to one's imagination.

The County, not surprisingly, requests that the case be dismissed for cause under § 707(a)(1). (ECF BK No. 143). Without question, the County is a "creditor" in this case, with a substantial tax lien on the property. The County also reminds the Court that it was vested with

---

[2] "June 4th, 1973 was much like any other summer's day in Peterborough and Ralph Melish, a file clerk at an insurance company, was on his way to work as usual when [suddenly] . . . *nothing happened*!" *Monty Python*: *The Day Nothing Happened* (1973).

5

the right to take title to the real estate when this case was filed, so it requests that the title be revested in the County, under 11 U.S.C. § 349(b)(3), upon dismissal and not abandoned to the Debtor under 11 U.S.C. § 554(c). (*Id.* ¶¶ 21-23). The County has submitted evidence demonstrating that no taxes have been paid on the Debtor's real property since 2008—prejudicing the County. (ECF BK No. 143 ¶ 11 & Ex. B). While this case has been languishing in bankruptcy, the unpaid real estate taxes grew from $16,500 to a whopping $156,000. (*Id.*). That gives the County the distinction of being the largest creditor in this case—a distinction the County surely finds distasteful.[3]

Among a trustee's many duties is an obligation "[to] collect and reduce to money the property of the estate . . . and close such estate *as expeditiously as is compatible with the best interests of parties in interest*." 11 U.S.C. § 704(a)(1) (emphasis added). The stipulated Order settling the appeal of this Court's decision granting summary judgment makes it pretty clear that it was in all parties' best interest to get the property sold within 6 months. (ECF AP No. 163). And, while the Trustee succeeded in having a sale contract approved within that time, the Trustee promptly ran into a brick wall—no access to public sewers. The Trustee's suggested solution—either buy the neighboring property or buy an easement from the owner of the neighboring property—leaves the Court to wonder . . . how? There is no money available in the Estate to do either. The Trustee makes no suggestion that either could be promptly accomplished—realistically—nor is the Trustee in a position to know what the financial impact of either option would have on creditors. The Court has no doubt that the Trustee and the Court

---

[3] In addition to mulling over whether it got the *BFP* factors right, this case also gives the Court pause to consider whether its application of 11 U.S.C. § 550, to fashion a remedy, may have missed the mark.

appointed broker have made efforts to negotiate a solution to the title problem with the neighboring land owner. But, as the Trustee conceded at oral argument, the neighboring land owner holds all the cards—and can block development of the Estate's property by refusing to grant an easement for sewers. And, on September 1, 2017, the school tax bill (estimated to be $8,500) will come due—adding to the County's financial injury.

Any further delay in the administration of this Estate is not "compatible with the best interests of parties in interest." 11 U.S.C. § 704(a)(1). The saga of CLD's former 50 acre parcel is at its end. Given the reason for the failure of the December 2015 sale contract to close—and the apparent inability to promptly remove that significant title impediment—the delay in this case has become "unreasonable." The impact of that delay has been "prejudicial" to creditors— as amply demonstrated by Ontario County. The Court finds that cause exists to dismiss this case under 11 U.S.C. § 707(a)(1). The case is **DISMISSED** under 11 U.S.C. § 707(a)(1).

The County urges the Court to order that title to the real property be revested in Ontario County, the entity in which the property was vested immediately before commencement of the case, under 11 U.S.C. § 349(b)(3). Absent such an order, the property would be deemed abandoned—and revert back to the Debtor at the time this case is closed—by operation of 11 U.S.C. § 554(c). The County's request is well taken. Allowing title to the property to be returned to the Debtor would be a gross miscarriage of justice. And while the Court cannot completely unring the bell in this case, it can stop the bell from vibrating any longer. The transfer avoided by this Court under 11 U.S.C. § 548 is **REINSTATED**, as permitted by 11 U.S.C. § 349(b)(1)(B). The Order and Judgment granted under 11 U.S.C. § 550 is **VACATED**, as provided under 11 U.S.C. § 349(b)(2). Title to the real property is **REVESTED** in the County of Ontario, under 11 U.S.C. § 349(b)(3). The Trustee is directed to file, within 10 days, such

reports as may be required by the United States Trustee, to confirm that administration of the Estate is complete.  The Clerk of Court is directed to close this case immediately upon receipt of the Trustee's final report.

       IT IS SO ORDERED.

DATED: June 29, 2017                 _____/s/_____
       Rochester, New York            HON. PAUL R. WARREN
                                            United States Bankruptcy Judge